1
2
3
4
5
6               **UNITED STATES DISTRICT COURT**
7                  **DISTRICT OF NEVADA**
8
9   EDWARD ELRY MORRISON,
10          Petitioner,                    Case No. 3:07-cv-00295-LRH-(VPC)
11  vs.                                    **ORDER**
12  JIM BENEDETTI, Acting Warden, et al.,
13          Respondents.
14
15          Before the Court are the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254
16  (#2), Respondents' Answer (#32), and Petitioner's Reply (#35).  The Court finds that relief is not
17  warranted, and it denies the Petition (#2).
18          After a jury trial in the Eighth Judicial District Court of the State of Nevada, Petitioner was
19  found guilty of burglary and petit larceny.  The trial court treated Petitioner as a habitual criminal,
20  pursuant to Nev. Rev. Stat. § 207.010; he received a sentence of life imprisonment with the
21  possibility of parole after 10 years for burglary, and a concurrent sentence for petit larceny with a
22  minimum of 5 years and a maximum of 10 years in prison.  Ex. 7 (#21-3, p. 7).[1]  Petitioner
23  appealed, and the Nevada Supreme Court affirmed.  Ex. 17 (#21-5, p. 18).  Petitioner then filed in
24  the state district court a post-conviction habeas corpus petition.  Ex. 19 (#21-6, p. 1).  The district
25
26
27  _____
28          [1]Page numbers in parentheses refer to the images of the documents in the Court's computer
    docket.

1    court denied the petition. Ex. 22 (#21-7, p. 29). Petitioner appealed, and the Nevada Supreme

2    Court affirmed. Ex. 24 (#21-8, p. 1).

3           Petitioner then commenced this action. The Court dismissed Ground 1 because it

4    determined that Petitioner had received a full and fair opportunity to litigate that Fourth Amendment

5    claim in the state courts. Order (#6) (citing <u>Stone v. Powell</u>, 428 U.S. 465, 481-82 (1976)). The

6    Court dismissed the speedy-trial claims in Ground 3 because Petitioner had procedurally defaulted

7    them. Order (#26). Ground 2, and the part of Ground 3 that alleges ineffective assistance of

8    counsel, remain.

9           On direct appeal, the Nevada Supreme Court summarized the facts established at trial:

> Taken into custody on suspicion in an unrelated offense, Morrison consented to a search of his backpack, which contained two women's sweat suits (with Macy's department store price tags attached), an evening dress, and cosmetics. Police detectives contacted a Macy's loss prevention officer about the clothing and discovered that a person matching Morrison's description had recently been involved in an incident at the store. The loss prevention officer observed Morrison acting suspiciously, namely that Morrison walked around the women's department with several articles of clothing draped over his arm and then moved behind a partition out of the surveillance camera's view. He emerged from behind the partition carrying a full plastic Macy's bag, with the clothing no longer draped over his arm. Morrison bypassed the cash registers and left the store. Morrison was charged with burglary and petit larceny. At trial, all but one of the clothing items discovered in Morrison's backpack were identified as coming from the Macy's store.

17   Ex. 17, pp. 3-4 (#21-5, pp. 22-23).

18          "A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on

19   the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or

20   involved an unreasonable application of, clearly established Federal law, as determined by the

21   Supreme Court of the United States,'" <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15 (2003) (quoting 28

22   U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an

23   unreasonable determination of the facts in light of the evidence presented in the State court

24   proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our

1    precedents, "so long as neither the reasoning nor the result of the state-court decision
     contradicts them."

2

3    Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court

4    may not issue the writ simply because that court concludes in its independent judgment that the

5    relevant state-court decision applied clearly established federal law erroneously or incorrectly.

6    Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76

7    (2003) (internal quotations omitted).

8            [T]he range of reasonable judgment can depend in part on the nature of the relevant
             rule.   If a legal rule is specific, the range may be narrow.   Applications of the rule
9            may be plainly correct or incorrect.   Other rules are more general, and their meaning
             must emerge in application over the course of time.   Applying a general standard to
10           a specific case can demand a substantial element of judgment.   As a result,
             evaluating whether a rule application was unreasonable requires considering the
11           rule's specificity.   The more general the rule, the more leeway courts have in
             reaching outcomes in case-by-case determinations.

12

13   Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

14           "Rule 7 of the Rules Governing § 2254 cases allows the district court to expand the record

15   without holding an evidentiary hearing." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir.

16   2005). 28 U.S.C. § 2254(e)(2) restricts the availability of an evidentiary hearing when the petitioner

17   fails to develop the factual record in the state courts; its requirements apply to a Rule 7 expansion of

18   the record, even without an evidentiary hearing. Cooper-Smith, 397 F.3d at 1241. "An exception to

19   this general rule exists if a Petitioner exercised diligence in his efforts to develop the factual basis of

20   his claims in state court proceedings." Id.

21           The petitioner bears the burden of proving by a preponderance of the evidence that he is

22   entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

23           Ground 2 contains several claims regarding Petitioner's treatment as a habitual criminal.

24   First, Petitioner alleges that he was not properly charged, because the criminal complaint filed in the

25   justice court charged him with petit larceny, a misdemeanor, while the information filed in the

26

27

28

1    district court after he was bound over for trial charged him with petit larceny, a category B felony.[2]

2    The Nevada Supreme Court held that this claim was procedurally barred because Petitioner could

3    have raised it on appeal.  Ex. 24, p. 9 (#21-8, p. 10) (citing Nev. Rev. Stat. § 34.810).  As the Court

4    explained in its earlier Order (#26), that ground for dismissal is an adequate and independent state

5    rule that precludes federal review of this claim.  Vang v. Nevada, 329 F.3d 1069, 1074 (9th Cir.

6    2003).  This part of Ground 2 is procedurally defaulted.

7        Second, Petitioner argues that the sentencing court did not make particularized findings of

8    fact that it was just and proper to treat him as a habitual criminal.  On this issue, the Nevada

9    Supreme Court held:

10       Finally, Morrison argues that the district court abused its discretion in adjudicating
       him a habitual criminal by failing to weigh appropriate factors for and against
11       imposing the habitual criminal enhancement.  Specifically, he argues that the district
       court's comments during sentencing do not reflect any rational consideration of the
12       appropriateness of the enhancement.  He further contends that the district court
       abused its discretion in adjudicating him a habitual criminal because the prior
13       felonies upon which the enhancement was premised were stale and trivial.

14       We have held that "as long as the record as a whole indicates that the sentencing
       court was not operating under a misconception of the law regarding the discretionary
15       nature of a habitual criminal adjudication and that the court exercised its discretion,
       the sentencing court has met its obligation under Nevada law."  Here, we conclude
16       that the district court did not abuse its discretion in relying on Morrison's five prior
       felony convictions in adjudicating him a habitual criminal.  We further conclude that
17       the record demonstrates that the district court properly exercised its discretion in
       determining that such an adjudication was warranted in this case.

18

19    Ex. 17, p. 5 (#21-5, p. 24) (citing Hughes v. State, 996 P.2d 890, 893-94 (Nev. 2000) (per curiam)).

20    Contrary to Petitioner's argument, Nev. Rev. Stat. § 207.010 does not require particularized findings

21    of fact.  Tilcock v. Budge, 538 F.3d 1138, 1144 (9th Cir. 2008) (citing O'Neill v. State, 153 P.3d 38

22    (Nev. 2007), Hughes v. State, 996 P.2d 890 (Nev.2000) (per curiam)).  The transcript of the

23    sentencing hearing shows that the judge considered the arguments of both sides before deciding to

24    impose the habitual criminal enhancement.  Ex. 6 (#21-3, p. 1).  This part of Ground 2 is without

25    merit.

26

27

28       [2]Petitioner was charged pursuant to the small habitual criminal provision, which elevates
   petit larceny to a category B felony.  See Nev. Rev. Stat. § 207.010(a).

1    Third, Petitioner argues that the decision to treat him as a habitual criminal violates various

2    provisions of the Constitution of the State of Nevada.  This part of Ground 2 is not addressable in

3    federal habeas corpus, because this Court can grant Petitioner relief "only on the ground that he is in

4    custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

5    § 2254(a).

6    Fourth and last, Petitioner argues that appellate counsel provided ineffective assistance.  This

7    claim duplicates the ineffective-assistance claim in Ground 3.

8    The remaining part of Ground 3 contains multiple claims of ineffective assistance of trial

9    counsel, sentencing counsel, and appellate counsel.  "[T]he right to counsel is the right to the

10   effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970).  A

11   petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's

12   representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466

13   U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant

14   such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

15   the proceeding would have been different," id. at 694.  "[T]here is no reason for a court deciding an

16   ineffective assistance claim to approach the inquiry in the same order or even to address both

17   components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

18   Strickland expressly declines to articulate specific guidelines for attorney performance

19   beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

20   duty to advocate the defendant's cause, and the duty to communicate with the client over the course

21   of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so

22   exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . .  Any

23   such set of rules would interfere with the constitutionally protected independence of counsel and

24   restrict the wide latitude counsel must have in making tactical decisions."  Id. at 688-89.

25   Review of an attorney's performance must be "highly deferential," and must adopt counsel's

26   perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."

27   Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's

28   conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

1   overcome the presumption that, under the circumstances, the challenged action 'might be considered

2   sound trial strategy.'" Id. (citation omitted).

3       The Sixth Amendment does not guarantee effective counsel per se, but rather a fair

4   proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v.

5   Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell

6   below an objective standard of reasonableness alone is insufficient to warrant a finding of

7   ineffective assistance. The petitioner must also show that the attorney's sub-par performance

8   prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that,

9   but for the attorney's challenged conduct, the result of the proceeding in question would have been

10  different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence

11  in the outcome." Id.

12      If a state court applies the principles of Strickland to a claim of ineffective assistance of

13  counsel in a proceeding before that court, the petitioner must show that the state court applied

14  Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v.

15  Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

16      Petitioner presents twenty-three instances of ineffective assistance his trial counsel, Craig

17  Jorgenson. The Nevada Supreme Court considered five of them in detail. First, he claims that

18  Jorgenson failed to challenge an erroneous information that charged him with a felony for petit

19  larceny rather than a misdemeanor for petit larceny. The Nevada Supreme Court held:

20          Morrison first contended that trial counsel Craig Jorgenson was ineffective for failing
            to challenge an allegedly erroneous information, which he argued demonstrated that

21          the State engaged in prosecutorial misconduct and provided inadequate notice that he
            would have to defend himself against a felony charge rather than a misdemeanor petit

22          larceny charge. An information filed on October 7, 2004, charged Morrison with
            burglary and "petit larceny (Felony–NRS 205.240)." However, the information

23          advised Morrison that the State intended to seek habitual criminal status should he be
            found guilty of the primary offenses of burglary and petit larceny. NRS

24          207.010(1)(a) provides that a person convicted of petit larceny "who has previously
            been two times convicted . . . of any crime which under the laws of the situs of the

25          crime or of this State would amount to a felony . . . is a habitual criminal and shall be
            punished for a category B felony." A habitual criminal adjudication pursuant to NRS

26          207.010(1)(a) elevated the petit larceny charge to a class B felony, as reflected in the
            information. Counsel had no reason to object to the information on the grounds

27          Morrison asserted in his petition. Therefore, we conclude that the district court did
            not err in summarily denying this claim.

28

1  Ex. 24, pp. 2-3 (#21-8, pp. 3-4) (citation omitted).  See also Ex. 3 (#21-1, p. 1) (information).

2  Given that the information properly charged Petitioner, counsel could not have been ineffective

3  because he did not challenge it.  The Nevada Supreme Court reasonably applied Strickland.

4      Second, Petitioner claims that Jorgenson did not seek dismissal based upon a violation of

5  Nevada's speedy trial law, Nev. Rev. Stat. § 178.556(1).  On this issue, the Nevada Supreme Court

6  held:

7        Morrison next argued that trial counsel was ineffective for not seeking dismissal of
       the information based on an alleged speedy trial violation.  NRS 178.556(1) provides

8        that a defendant should be brought to trial within 60 days after the arraignment on the
       indictment or information.  Morrison's trial commenced 63 days after his

9        arraignment.  However, "the failure to set a trial within 60 days is not per se
       equatable to the denial of a speedy trial."  Here, although Morrison asserted his right

10       to a speedy trial and the delay appears to be related to the district court's schedule,
       [fn 8] the length of the delay was minimal and Morrison did not adequately explain

11       any resulting prejudice.  Consequently, we conclude that there was no reasonable
       probability that the result of his trial would have been different had counsel sought a

12       dismissal on speedy trial grounds.  Therefore, the district court did not err in
       summarily denying this claim.

13
            [Footnote 8] The district court minutes reveal that the State and the defense

14          were ready to proceed within 60 days of arraignment, but the district court
            referred Morrison's case to the overflow calendar and set the trial for

15          December 20, 2004, 63 days after arraignment.

16  Ex. 24, pp. 3-4 (#21-8, pp. 4-5) (citations omitted).  "[B]efore error for failure to accord a speedy

17  trial can be raised on appeal, objection to the trial date set must have been made in the trial court."

18  Anderson v. State, 477 P.2d 595, 598 (Nev. 1970).  However, if Jorgenson had objected to the date,

19  the result would not have been the dismissal of the action.  Instead, the court either would have set

20  the trial on an earlier date or explained why it could not set the trial on an earlier date.  See Harris v.

21  State, 466 P.2d 850, 852 (Nev. 1970).  Either way, the outcome of the trial would not have differed.

22  The Nevada Supreme Court reasonably applied Strickland.

23      Third, Petitioner argues that Jorgenson failed to challenge the validity of the search of his

24  backpack.  On this issue, the Nevada Supreme Court held:

25        Morrison asserted that his trial counsel was ineffective for not challenging the search
       of Morrison's backpack.  Morrison acknowledged that he consented to a reasonable

26        search of the backpack but that the search conducted was unreasonable because the
       items confiscated were unrelated to the charge for which he was being investigated.

27        To succeed on a claim of ineffective assistance of counsel based on counsel's failure
       to seek suppression of allegedly illegally seized evidence, Morrison was required to

28        establish prejudice by "showing that the claim was meritorious and that there was

-7-

1    reasonable likelihood that the exclusion of the evidence would have changed the
     result of the trial."
2
     Here, Morrison was taken into custody on suspicion of an unrelated offense of
3    automobile burglary.  During questioning, Morrison signed a consent form and orally
     granted detectives permission to search his backpack.  Although detectives initially
4    conducted the search to recover items related to the automobile burglary, they
     discovered a plastic bag containing women's clothing with Macy's department store
5    price tags attached and no accompanying receipt.  Subsequent investigation led to
     Morrison's arrest and conviction for the instant offenses.  Morrison testified on his
6    own behalf at trial and made no allegation that the search conducted extended beyond
     that to which he consented.  Even assuming trial counsel had challenged the
7    constitutionality of the search of his backpack, we conclude that there was no
     reasonable probability that the result of his trial would have been different.
8    Therefore, we conclude that the district court did not err in summarily denying this
     claim.
9

10   Ex. 24, pp. 4-5 (#21-8, pp. 5-6) (citations omitted).  Once Petitioner consented to the search of the

11   backpack, any items that the detectives found in their plain view are subject to seizure, even if those

12   items did not have any relation to the automobile burglary under investigation.  See Harris v. United

13   States, 390 U.S. 234, 236 (1968).  Jorgenson could not have succeeded with a motion to suppress

14   the items taken from Macy's.  The Nevada Supreme Court reasonably applied Strickland.

15           Fourth, Petitioner argues that Jorgenson failed to secure an affidavit from Josie Bayudan,

16   who represented Petitioner in an earlier criminal case.  Petitioner alleges that Bayudan's affidavit

17   would support his claim of malicious prosecution because the prosecutor was angered at the

18   acquittal of Petitioner in the automobile burglary case.  On this issue, the Nevada Supreme Court

19   held:

20   Morrison next argued that trial counsel was ineffective for failing to secure an
     affidavit from Josie T. Bayudan, who represented Morrison in another criminal
21   matter (case no. C-205109).  Morrison contended that Bayudan's affidavit would
     have supported a claim of malicious prosecution because Bayudan was aware that the
22   prosecutor in case no. C-205109, who also prosecuted Morrison in the instant action,
     was "pissed off" at Morrison as a result of his acquittal in that case.  Morrison
23   claimed that the prosecutor's animosity toward him formed the impetus for the
     instant prosecution and that trial counsel was aware of the prosecutor's feelings well
24   before trial.  However, even assuming the prosecutor expressed unhappiness about
     Morrison's prior acquittal, we conclude that there was no reasonable probability,
25   considering the evidence against him, that the result of his trial would have been
     different had trial counsel challenged the prosecution as Morrison desired.
26   Therefore, we conclude that the district court did not err in summarily denying this
     claim.
27

28

1   Ex. 24, pp. 5-6 (#21-8, pp. 6-7).  Petitioner was bound over to the state district court on October 4,

2   2004.  Ex. 3 (#21, p. 15).  He was arraigned in district court in this case on October 18, 2004.  Ex. 4

3   (#21-1, p. 5).  He was tried and acquitted in the automobile burglary case no. C-205109, on

4   November 24, 2004.  The prosecutor might not have been pleased that Petitioner was acquitted in

5   case no. C-205109, but a claim that the prosecution in this case was motivated by the loss in the

6   other case would require the prosecutor to have seen into the future.  An affidavit would not have

7   changed the result of Petitioner's trial in this case.  The Nevada Supreme Court reasonably applied

8   Strickland.

9           Fifth, Petitioner argues that Jorgenson failed to object to the judge's incorrect statement on

10  the burden of proof.  In his state habeas corpus appeal, the Nevada Supreme Court held:

11          Morrison argued that counsel was ineffective for failing to object to an improper
            reasonable doubt instruction at the beginning of the trial.  On direct appeal, we
12          concluded that the instruction was erroneous, but that Morrison suffered no prejudice
            considering the district court's subsequent proper instructions respecting reasonable
13          doubt and the burden of proof.  Here, we conclude that there was no reasonable
            probability that the result of his trial would have been different even if counsel had
14          objected to the district court's initial instruction.  Therefore, the district court did not
            err in summarily denying this claim.

15

16  Ex. 24, p. 6 (#21-8, p. 7) (footnote omitted).  On direct appeal, the Nevada Supreme Court held:

17          Here, while explaining the trial process, the district court initially advised the jury
            that after applying the law to the facts, it would decide "whether the State has met its
18          burden in proving the defendant guilty or not guilty beyond a reasonable doubt."
            Every defendant is cloaked with the presumption of innocence until the contrary is
19          proved by competent evidence beyond a reasonable doubt.  We conclude that the
            district court's advisement was erroneous and that it was plain and clear.  However,
20          to warrant relief, the error must affect Morrison's substantial rights.  At the
            conclusion of the evidence, the district court properly instructed the jury:

21
                    The Defendant is presumed innocent until the contrary is proved.  This
22              presumption places upon the State the burden of proving beyond a reasonable
                doubt every material element of the crime charged and that the Defendant is
23              the person who committed the offense.

24          The district court further instructed the jury on the statutory definition of reasonable
            doubt.  Despite the district court's initial erroneous advisement respecting the State's
25          burden of proof, we conclude that this error did not affect Morrison's substantial
            rights in light of the district court's subsequent proper instructions.  Therefore, we
26          deny relief on this issue.

27

28

                                                    -9-

1  Ex. 17, pp. 2-3 (#21-5, pp. 21-22) (citations omitted).  Even though Jorgenson did not object, the

2  Nevada Supreme Court did consider on direct appeal the incorrect statement of the burden of proof.

3  Its determination in the state habeas corpus proceedings that Petitioner suffered no prejudice from

4  the lack of objection was a reasonable application of Strickland.

5       In a long list, Petitioner raised many other issues of ineffective assistance of trial counsel.

6  Ex. 19 (#21-6, pp. 22-24).  He raises the same issues in his Petition (#2).  On these issues, the

7  Nevada Supreme Court held:

8            Morrison also contended that his trial counsel was ineffective for the following
             reasons:  counsel did not discuss a defense strategy with Morrison; counsel did not
9            subpoena or interview potential witnesses; counsel refused to file various pretrial
             motions; counsel did not request a hearing to explore the validity of Morrison's prior
10           convictions; counsel failed to appear at sentencing without explanation; [fn 13]
             counsel did not inform Morrison of his right to appeal or file an appeal; [fn 14]
11           counsel allowed Morrison to testify knowing that Morrison was taking psychotropic
             drugs; counsel made an attempt to validate Morrison's claim that he was mentally
12           impaired; counsel refused to provide Morrison with copies of police reports; counsel
             failed to object to repeated badgering during the prosecutor's cross-examination of
13           Morrison; counsel failed to object to Morrison not being allowed to view
             surveillance video introduced at trial; counsel did not use a list of questions Morrison
14           provided him; the prosecution attempted to introduce evidence not disclosed during
             discovery; counsel failed to object to the prosecutor's running narrative during the
15           jury's viewing of a surveillance videotape; counsel failed to identify clear
             inconsistencies in the testimony of the State's witnesses; counsel appeared at trial
16           tired, unkempt, distastefully dressed, disinterested and detached; and counsel
             improperly introduced a question regarding prior bad acts.  However, these claims
17           are either belied by the record or not adequately supported by specific factual
             allegations demonstrating prejudice.  Therefore, we conclude that the district court
18           did not err in summarily denying these claims.

19                [Footnote 13] Gary Guymon represented Morrison at sentencing.

20                [Footnote 14] Howard Brooks and Robert Miller represented Morrison in his
                  direct appeal, which this court considered.  See Morrison, Docket No. 44719.
21

22  Ex. 24, pp. 6-7 (#21-8, pp. 7-8).  Given that most of his claims of ineffective assistance in his state

23  petition were conclusory, without any allegations of fact, and given Strickland's requirement that

24  Petitioner prove that counsel performed deficiently and prejudiced him, that was a reasonable

25  application of Strickland.

26       Next in Ground 3, Petitioner argues that his counsel at sentencing, Gary Guymon, was

27  ineffective.  In his state habeas corpus appeal, the Nevada Supreme Court held:

28

1

2

3

4

5

6

7

> Morrison next argued that Gary Guymon, who represented Morrison at sentencing, was ineffective for speaking harshly to him and for infuriating the district court by "stammering for approximately two to three minutes, resulting in Morrison receiving a lengthy prison sentence." The trial transcript shows that at the outset the district court was disturbed by Morrison's lengthy criminal history. Counsel attempted to persuade the district court not to adjudicate Morrison a habitual criminal considering his positive work history, that his prior convictions were all theft-related and non-violent, and that the thefts were motivated by Morrison's drug use. We conclude that Morrison failed to demonstrate that he was entitled to an evidentiary hearing on these issues. Further, even assuming counsel communicated harshly with Morrison, no discernable prejudice resulted from it. Consequently, we conclude that the district court did not err in summarily denying this claim.

8   Ex. 24, pp. 7-8 (#21-8, pp. 8-9). The transcript of the sentencing hearing confirms the Nevada

9   Supreme Court's holding regarding Guymon's argument and the judge's concern with Petitioner's

10  criminal history. Ex. 6 (#21-3, p. 1). Furthermore, Petitioner has not demonstrated any prejudice

11  resulting from Guymon speaking harshly to him. The Nevada Supreme Court reasonably applied

12  Strickland.

13       Petitioner also claims that Guymon inappropriately waived Petitioner's presence at a hearing

14  on his state habeas corpus petition. Petitioner did not present this claim to the Nevada Supreme

15  Court, but the Court can deny the claim on its merits despite the failure to exhaust. 28 U.S.C.

16  § 2254(b)(2). Apparently, the state district court conducted a hearing on Petitioner's habeas corpus

17  petition outside of his presence. Petitioner's Ex. I (#2-1, p. 20). Petitioner has no right to appointed

18  counsel, and thus no right to effective assistance of counsel, in state post-conviction proceedings.[3]

19  Pennsylvania v. Finley, 481 U.S. 551 (1987).

20       Finally in Ground 3, Petitioner claims that his appellate attorneys were ineffective. On this

21  issue, the Nevada Supreme Court held:

22

23

24

25

> Morrison contended that his appellate counsel, Howard S. Brooks was ineffective for failing to communicate with him during his appeal. However, Brooks eventually withdrew as Morrison's counsel and Morrison did not adequately explain how he was prejudiced by Brooks' representation. Consequently, we conclude that the district court did not err in summarily denying this claim. After Brooks' withdrawal as counsel, Robert Miller was appointed to represent Morrison in his direct appeal. Morrison complained that Miller was ineffective for failing to adequately

26

27

28

---

[3]This assumes that Guymon was representing Petitioner in the state habeas corpus proceedings. Despite the transcript of the hearing listing Guymon as Petitioner's lawyer, Petitioner's state habeas corpus petition was pro se. See Ex. 19 (#21-6, p. 1).

communicate with him during the appellate process and in declining to raise matters Morrison wanted included in his appeal. He did not identify in his petition below what issues he desired Miller to raise or adequately explain how his dissatisfaction with Miller prejudiced his appeal. Consequently, we conclude that the district court did not err in summarily denying this claim.

Ex. 24, pp. 8-9 (#21-8, pp. 9-10) (citation omitted). Petitioner's state habeas corpus petition does not allege what issues he wanted appellate counsel to raise, let alone whether those issues had any probability of success. The Nevada Supreme Court reasonably applied <u>Strickland</u>.

Petitioner raises several claims of ineffective assistance of appellate counsel that he did not raise before the Nevada Supreme Court. The Court can deny them on the merits despite the failure to exhaust. 28 U.S.C. § 2254(b)(2). First, he claims that Miller continued to represent him despite being fired. Petitioner has not alleged any prejudice that he suffered from Miller continuing to represent him. Furthermore, Respondents correctly note that Petitioner, being unable to afford his own attorney, does not have a choice of counsel to represent him. <u>United States v. Gonzalez-Lopez</u>, 548 U.S. 140, 151 (2006) (citing <u>Caplin & Drysdale v. United States</u>, 491 U.S. 617, 624 (1989), and <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988)).

Second, Petitioner alleges that Miller failed to file a supplement to his direct appeal brief. Petitioner did not present the proposed supplement to the Nevada Supreme Court in his state habeas corpus petition, thus leading to the ruling, quoted above, that he did not identify what issues he wanted counsel to raise on direct appeal. Petitioner possessed the proposed supplement and could have submitted it with his state habeas corpus petition, because during his direct appeal the clerk of the Nevada Supreme Court had sent it back to him unfiled. Petitioner failed to develop the factual basis of this claim in his state habeas corpus proceedings, and thus he cannot expand the record to include his proposed supplement in this Court. <u>Cooper-Smith</u>, 397 F.3d at 1241; 28 U.S.C. § 2254(e)(2).

Third, Petitioner alleges that Miller sent Petitioner a letter, along with a copy of the direct appeal order that stated that Petitioner raised three issues on appeal. <u>See</u> Ex. 17 (#21-5, p. 20). Petitioner claims that the Nevada Supreme Court's statement is inaccurate because Miller failed to comply with Petitioner's demand to file the supplement to the opening brief. The Court has ruled on the issue of the supplement, just above. Petitioner has demonstrated neither deficient

1  performance nor prejudice because Miller sent him a letter and copy of the Nevada Supreme Court's

2  order.

3        Fourth, Petitioner alleges that Miller filed all of his briefs late.  The Nevada Supreme Court

4  considered all of the grounds that Miller raised on their merits and did not dismiss anything for

5  failure to comply with filing deadlines.  See Ex. 17 (#21-5, p. 18).  Even if Miller did file briefs late,

6  Petitioner suffered no prejudice.

7        The Court concludes that reasonable jurists would not find the Court's dispositions of all

8  grounds, including those dismissed earlier in the proceedings, to be debatable, and the Court will

9  not issue a certificate of appealability.

10       IT IS THEREFORE ORDERED that the Petition for a Writ of Habeas Corpus Pursuant to

11 28 U.S.C. § 2254 (#2) is **DENIED**.  The Clerk of the Court shall enter judgment accordingly.

12       IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

13       DATED this 12th day of March, 2010.

14

15

16                                        _____

17                                        LARRY R. HICKS
                                          UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28